**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MARTIN REYES, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:13-cv-1227-WTL-DKL |
| | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

Petitioner Martin Reyes was convicted in an Indiana state court of murder and other serious felonies based on a tragic outburst of violence in late August 2004.  He is currently serving a seventy-five year sentence for these crimes.  Mr. Reyes now seeks a writ of habeas corpus, from this Court.

For the reasons explained in this Entry, Mr. Reyes's petition for a writ of habeas corpus is **denied** and the action dismissed with prejudice.  In addition, the Court finds that a certificate of appealability should not issue.

**The Petition for Writ of Habeas Corpus**

**I.
Background**

Following a jury trial, Mr. Reyes was found guilty of murder, attempted murder, aggravated battery, and battery with a deadly weapon causing serious bodily injury.  His convictions were upheld by the Indiana Court of Appeals on direct appeal.  *See Reyes v. State*, 856 N.E.2d 788 (Ind. App. 2006) ("*Reyes I*").  The denial of post-conviction relief was affirmed in *Reyes v. State*, 985 N.E.2d 79 (Ind. App. 2013) ("*Reyes II*").  The relevant factual and procedural background were summarized by the Indiana Court of Appeals in *Reyes II* as follows:

The facts underlying Reyes' convictions were adopted from this Court's memorandum opinion on direct appeal:

> In 2004, Reyes and his wife, Veronica, lived next door to Silbiano Osornio (Silbiano), and his wife Adela Garcia (Adela) (collectively, the Osornios), in LaPorte County. The Osornios lived with their son, Jorge, and one of their daughters, Alma, and her three children. The Osornios' other daughter, Delia, lived nearby with her husband, Jose.
>
> On Saturday, August 28, 2004, Reyes was in bed with his wife when he saw a man peeking through their bedroom window. When Reyes rose, the man ran away. Reyes went outside and saw a tire propped against the house, which allowed the man to see in the window. He then left to run some errands.
>
> That same morning Silbiano and Jorge left around 7 a.m. for work. They returned around 11 a.m. Silbiano went in the house to sleep while Jorge and some others stayed outside to tint car windows. When Reyes returned home, after Silbiano and Jorge, he walked over to the Osornios' home and asked to speak with Silbiano. Reyes put his arm around Silbiano, walked him outside, and accused Silbiano of looking into his window that morning. Silbiano denied the accusation. Reyes told Silbiano, "just shut up you old man." Then, Reyes started pushing Silbiano commenting he would not hold up because he was an old man. At that point, Jorge stepped in and a fight ensued between Reyes and Jorge. After approximately five minutes Silbiano broke up the fight. Reyes retreated into his house, all the while yelling, "it's not over," "you're gonna pay for this," "it's not going to end like this," and "that he was going to kill him."
>
> After the fight, Reyes entered and exited his house several times. At one point he drove away hitting Jorge's truck when he pulled in and out of his parking spot. Upon returning home, Reyes remained inside until his brother, Ignacio, arrived.
>
> Later that afternoon, an argument ignited between Delia, the Osornios' daughter, and Veronica, Reyes' wife; a fight ensued. Reyes and Ignacio came outside and separated the women. Jorge ran to Delia's defense and a fight ensued between Ignacio and Jorge. As the two were fighting, Reyes drew a concealed knife and stabbed Jorge in the chest, puncturing his heart. Reyes then proceeded toward Delia when her husband, Jose, pushed him. Reyes and Jose grabbed each other. Then, Ignacio grabbed Jose from behind and Reyes stabbed Jose. After that Reyes went after Jorge's unarmed cousin, Baltazar, with the knife. Baltazar unsuccessfully tried to disarm Reyes and was stabbed in the process. Reyes next turned to Adela who had picked up a shovel. He was waiving the knife around when

> Silbiano came outside and took the shovel away from his wife. Reyes said, "do you want [anymore] you (sic) mother fuckers?"
>
> Reyes fled from the yard and several people chased after him. Not far from the scene the police apprehended him. While being taken into custody, Silbiano kicked Reyes in the chin. Jorge died in the yard as a result of the stab wound. Jose was taken to the hospital and required surgery to save his life.

[*Reyes I*, 856 N.E.2d 788, at *2.] The State charged Reyes with Count I, murder; Count II, attempted murder, a Class A felony; Count III, aggravated battery, a Class B felony; and Count IV, battery with a deadly weapon resulting in serious bodily injury, a Class C felony. After a week-long trial in June 2005, a jury found Reyes guilty as charged, and he was sentenced to an aggregate sentence of seventy-five years. Reyes later appealed, challenging the admission of certain evidence at trial and his sentence. This Court affirmed Reyes' convictions and sentence.

In 2011, Reyes sought post-conviction relief, alleging ineffective assistance of trial counsel. Reyes claimed, in part, that his trial counsel was ineffective for (1) failing to request an interpreter solely for the defense, (2) failing to call Reyes' wife as a witness and improperly examining other witnesses, (3) failing to request a mistrial, and (4) failing to object to alleged prosecutorial misconduct. After a hearing, the post-conviction court issued findings of fact and conclusions of law denying Reyes' request for relief.

The post-conviction court first rejected the argument that trial counsel should have requested a separate defense interpreter for Reyes, who spoke Spanish and understood very little English. The court explained that in making this argument, Reyes relied on a case, *Arietta v. State*, 878 N.E.2d 1238 (Ind. 2008), that had been decided years after Reyes' trial, and therefore was inapplicable. The court concluded that when Reyes was on trial, a separate defense interpreter was not required, and thus trial counsel was not ineffective for failing to request one. The postconviction court also found that trial counsel was not ineffective for failing to call Reyes' wife as a witness and in examining other witnesses; counsel made strategic decisions in this context, which were entitled to deference. The court next rejected Reyes' claim that trial counsel was ineffective for failing to request a mistrial following objectionable testimony from a number of witnesses. The court explained that counsel had objected to the testimony, requested admonishments, and moved for a mistrial appropriately. Finally, the court found that trial counsel was not ineffective for failing to object to alleged prosecutorial misconduct. The court reasoned that no prosecutorial misconduct had occurred, thus no objection made on that basis would have been sustained.

*Reyes II*, 985 N.E.2d 79, at *1-2 (citations omitted). Mr. Reyes's petition to transfer to the Indiana Supreme Court was denied on May 7, 2013.

Mr. Reyes then filed the instant petition for a writ of habeas corpus with this Court. He argues that the Indiana Court of Appels in *Reyes II* unreasonably applied *Strickland v. Washington,* 466 U.S. 668, 687 (1984), and he perhaps—although it is unclear—raises a free-standing due process claim.

## II.
### Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). The petitioner filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). His petition, therefore, is subject to AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

"Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

In addition to the foregoing substantive standard, "federal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Johnson v. Foster*, 2015 WL 2088974, *2 (7th Cir. May 6, 2015) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014), and citing 28 U.S.C. § 2254(b)(1)); *see also Anderson v. Benik,* 471 F.3d 811, 814-15 (7th Cir. 2006) ("To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts.") (internal quotation marks and citation omitted); *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000) ("A state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim.").

Insofar as pertinent here, procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted).  "A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard." *Johnson*, 2015 WL 2088974, at *3.

## III.
## Discussion

### A.   Procedural Default

Mr. Reyes ostensibly raises five ineffective assistance of counsel claims and a free-standing due process claim in his habeas petition.  The respondent contends that all but one of the

ineffective assistance of counsel claims are procedurally defaulted because Mr. Reyes did not raise those claims to the Indiana Supreme Court in his petition to transfer the decision in *Reyes II*, and further, that the free-standing due process claim was not presented to the Indiana Court of Appeals and is therefore also procedurally defaulted.

The Court agrees with the respondent that all but one of Mr. Reyes's specifications of ineffective assistance of counsel are procedurally defaulted.  Mr. Reyes raised only one ineffective assistance of counsel claim in his petition to transfer to the Indiana Supreme Court—namely, whether trial counsel was ineffective for not requesting a defense-only Spanish language translator to communicate with Mr. Reyes.  [Filing No. 12-12 at 13-17.]  Because Mr. Reyes did not present his four other specifications of ineffective assistance of counsel to the Indiana Supreme Court in his petition to transfer, they are procedurally defaulted.  *See Lewis*, 390 F.3d at 1025-26.

Mr. Reyes seeks to avoid this conclusion by pointing out, as is true, that ineffective assistance of counsel is a single claim no matter the number of attorney errors it is based on.  *See Peoples v. United States*, 403 F.3d 844, 847–48 (7th Cir. 2005); *Duarte v. United States*, 81 F.3d 75, 77 (7th Cir. 1996). This standard cannot be used, however, to circumvent the exhaustion requirement as to each specification of attorney ineffectiveness. *See Campbell v. Burris*, 515 F.3d 172, 185 (3d Cir. 2008) ("[I]neffective assistance of counsel claims based on different acts or omissions are discrete claims and must each be exhausted."); *Kelley v. Secretary for Dep't of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[T]o preserve a claim of ineffective assistance of counsel, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.").

As to Mr. Reyes's free-standing due process claim regarding a defense-only translator, he raised this claim in his petition to transfer to the Indiana Supreme Court, but did not fairly

present it to the Indiana Court of Appeals in *Reyes II*.  Mr. Reyes concedes as much in his petition

before this Court.  Specifically, Mr. Reyes states that "[a]ll post-conviction issues [raised in the

post-conviction court] concerned the Sixth Amendment right to effective assistance of counsel,"

[Filing No. 1 at 6], and that he "appealed the post-conviction court's decision, raising only the

ineffective assistance of trial counsel claim in [*Reyes II*]," [Filing No. 1 at 7].  Even if he had not

conceded this, a review of Mr. Reyes's post-conviction appellate brief reveals only fleeting

references to a due process claim, all of which are made in an attempt to demonstrate that he can

meet both prongs of the *Strickland* analysis.  [*See* Filing No. 12-8 at 11-19.]  This is insufficient

to fairly present this claim to the Indiana Court of Appeals.  *See Baldwin v. Reese*, 541 U.S. 27, 33

(2004).  Moreover, this is congruent with the Indiana Court of Appeals' understanding of Mr.

Reyes's post-conviction appellate brief, given that it construed his brief to only be raising

ineffective assistance of counsel claims.  *See Reyes II*, 985 N.E.2d 79, at *1.  Accordingly, because

Mr. Reyes did not raise a free-standing due process claim "at each and every level in the state court

system," he has procedurally defaulted this claim as well.  *Lewis*, 390 F.3d at 1025-26.

Mr. Reyes has not shown the presence of circumstances that would allow him to

overcome the consequences of these defaults.  Accordingly, the Court will not reach the merits of

these defaulted claims.  This leaves only Mr. Reyes's claim that trial counsel provided ineffective

assistance by not requesting a defense-only Spanish language translator to communicate with Mr.

Reyes for the Court to address on the merits.

### B.   Ineffective Assistance of Trial Counsel

As to the claim that was properly presented in the state courts for federal habeas review,

the methodology for the Court's analysis is this: The first step under § 2254(d)(1) is "to identify

the 'clearly established Federal law, as determined by the Supreme Court of the United States' that

governs the habeas petitioner's claims." *Marshall v. Rodgers,* 133 S. Ct. 1446, 1449 (2013) (citing

*Williams v. Taylor*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).   In

proceeding with the analysis, a federal habeas court "must determine what arguments or theories

supported, or, [in the case of an unexplained denial on the merits], could have supported, the state

court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme

Court]."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).   If a state court's decision "was

reasonable, it cannot be disturbed."  *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

     The clearly established federal law at issue in this case as set forth by the Supreme Court

is as follows: a defendant has a right under the Sixth Amendment to effective assistance of counsel.

*See Strickland v. Washington,* 466 U.S. 668, 687 (1984).   For a petitioner to establish that

"counsel's assistance was so defective as to require reversal," he must make two showings: (1)

that counsel rendered deficient performance that (2) prejudiced the petitioner.  *Id.*  With respect to

the performance requirement, "[t]he proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)

(quoting *Strickland*, 466 U.S. at 688).

     When the deferential AEDPA standard is applied to a *Strickland* claim, the following

calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is . . . difficult.  The standards created by *Strickland* and § 2254(d) are both
> "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521
> U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at __, 129 S. Ct. at 1420.
> The *Strickland* standard is a general one, so the range of reasonable applications is
> substantial. 556 U.S., at ___, 129 S. Ct. at 1420.  Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question is not

whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105.

Mr. Reyes argues that his trial counsel provided ineffective assistance by not requesting a defense-only Spanish language translator.  After setting forth the *Strickland* standard, the Indiana Court of Appeals in *Reyes II* addressed this claim on the merits:

> Reyes first claims that his trial counsel was ineffective for failing to request a defense interpreter for Reyes, who speaks Spanish and understands limited English. However, two court-appointed interpreters were present throughout Reyes' trial. They functioned as "proceedings interpreters," and alternated between sitting at the defense table with Reyes and translating for the court at the witness stand and near the bench. One of the interpreters also accompanied trial counsel to a meeting with Reyes in jail.
>
> In arguing that trial counsel should have requested a separate defense interpreter, Reyes relies primarily on the case of *Arrieta v. State*. 878 N.E.2d at 1238. We need not analyze the applicability of *Arrieta*, however, because that case was decided in 2008, and Reyes was tried in 2005. Reyes' trial counsel cannot be ineffective for failing to anticipate a change in existing law. *Reed v. State*, 856 N.E.2d 1189, 1197 (Ind. 2006). Instead, *Martinez Chavez v. State*, 534 N.E.2d 731, 737 (Ind. 1989) governed this issue at the time of Reyes' trial.
>
> In that case, the defendant, Martinez Chavez, was on trial for murder. Like Reyes, he spoke Spanish and understood limited English. At his trial, the court appointed one proceedings interpreter. After Martinez Chavez was convicted, he argued that he should have had a separate defense interpreter as well. Our Supreme Court disagreed, saying that Martinez Chavez used the proceedings interpreter to communicate with his counsel during recesses and at times other than during the trial, and thus Martinez Chavez was not denied the right to a fair trial. *Id.* In this case, Reyes had not one, but two proceedings interpreters, who alternated between sitting at the defense table with Reyes and translating for the court at the witness stand and near the bench. One of the interpreters also attended a meeting with Reyes and his trial counsel. Thus, under *Martinez Chavez*, which governed at the time of Reyes' trial, Reyes received the type of interpretation to which he was entitled. Trial counsel was not ineffective for failing to request a defense interpreter for Reyes.

*Reyes II*, 985 N.E.2d 79, at *3-4.  Because the Indiana Court of Appeals addressed Mr. Reyes's claim on the merits, its decision is subject to review pursuant to AEDPA.

Although Mr. Reyes asserts that the Indiana Court of Appeals unreasonably applied *Strickland*, he does not point to any authorities supporting that position.  The Indiana Court of Appeals correctly recognized that if the request Mr. Reyes contends his counsel should have made would not have been granted, he cannot show that his counsel's performance was deficient or that he was prejudiced as a result thereof.  *Cf. Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001).  The Indiana Court of Appeals concluded that this principle applied to Mr. Reyes's claim because, pursuant to governing law at the time of Mr. Reyes's trial, *Martinez Chavez*, even if Mr. Reyes's counsel had requested a defense interpreter solely for Mr. Reyes, such a request would have been denied.  *See Reyes II*, 985 N.E.2d 79, at *4.  Mr. Reyes does not directly dispute this proposition, let alone show that it was objectively unreasonable.  Nor does Mr. Reyes identify a federal standard, if there was one at the time, that was contrary to *Martinez Chavez*.  Having not done either of these things, Mr. Reyes has failed to carry his burden of establishing that he is entitled to habeas relief on this claim.  *See Harding*, 380 F.3d at 1043.

In sum, the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000).  Therefore, Mr. Reyes is not entitled to habeas relief on his ineffective assistance of counsel trial counsel claim.

## IV.
## Conclusion

"[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court."  *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting) (internal citations omitted).  In this case, Mr. Reyes has encountered the hurdle of the doctrine of procedural default as to all but one of his claims.  He has not shown the existence of circumstances permitting him to overcome these hurdles, and hence is not entitled to

the relief he seeks as to those claims.

As to the remaining ineffective assistance of counsel claim, this Court has carefully reviewed the state record in light of that claim and has given such consideration to it as the limited scope of its review in a habeas corpus proceeding permits. The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. Mr. Reyes's habeas petition does not present such a situation.

Mr. Reyes's petition for a writ of habeas corpus [dkt 1] is therefore **denied.** Judgment consistent with this Entry shall now issue.

<h3 align="center">Certificate of Appealability</h3>

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. ▪ 2253(c), the Court finds that Mr. Reyes has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 6/8/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically Registered Counsel